# CHARLESTON.

STATE v. MIKE McDERMOTT

(No. 5167)

Submitted May 12, 1925.    Decided May 19, 1925.

CRIMINAL LAW—*On Showing of Accused's Good Character, Refusal to Instruct That if Evidence of Good Character with Other Evidence Creates Reasonable Doubt of Guilt to Acquit Held Error.*

In a trial on an indictment for unlawfully carrying a pistol, where the evidence is in sharp conflict as to whether defendant had in his possession a pistol as charged, and defendant has shown good character as a peaceable and law-abiding citizen, which is not controverted, it is error to refuse to instruct the jury that they may take into consideration defendant's good character together with all of the evidence in determining his guilt beyond a reasonable doubt, and that if such reasonable doubt is thereby created they should find for the defendant.

(Criminal Law, C. J. 16 § 2383).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Barbour County.

Mike McDermott was convicted of unlawfully carrying a revolver, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*J. Blackburn Ware* and *D. D. Stemple,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *J. Sherman Lilly,* Assistant Attorney General, for the State.

LIVELY, PRESIDENT:

Defendant below prosecutes this writ to a judgment sentencing him to imprisonment for six months and payment of a fine of $50.00 on a verdict finding him guilty of unlawfully carrying a revolver, alleging error in the instructions.

Defendant was a non-union miner and in going to work at a mine passed through the premises of the prosecuting witness Ed. Sheets, a union miner then on strike, who

·accosted him concerning his attitude toward the strike then in progress. Webb's wife was present standing on the porch of her dwelling. Hotinspillar was said to have been present but was not a witness. Webb, his wife, and defendant are not in accord as to the words used on that occasion, but it is apparent that the altercation began because defendant was working in the mine while others, including Webb, were on strike. Webb and his wife say that defendant, after having passed by and being within ten or fifteen yards of them and after the altercation was in progress, took a revolver from his hip pocket ·and loaded it, saying as he went away for Webb and Hotinspillar to come on and he would blow their brains out. Defendant denied that he had a revolver at that or any other time. He says that he had a carbide flask of a bright color in his hip pocket, which he took out on that occasion, after Webb began to follow him armed with a piece of rail. Several of defendant's neighbors said his reputation as a peaceful and law abiding man in the community was good; and no one testified otherwise.

The errors assigned are in giving and refusing to give certain instructions. Instruction No. 1 for the State which told the jury that if they believed from the evidence beyond a reasonable doubt that defendant at the time and place alleged in the indictment committed the crime therein charged against him they should find him guilty as charged, is criticized because it uses the word "crime" when the offense charged was a misdemeanor. A crime is "an omission of a duty commanded, or the commission of an act forbidden by a public law." All crimes are divided into felonies and misdemeanors, according to the degree of punishment. The jury could not have been misled by the technical distinction which is sometimes made between crimes and misdemeanors.

State's Instruction No. 2 attempts to give the jury the meaning of reasonable doubt, telling them that such doubt "is not a vague or uncertain doubt but such a doubt as reasonable men, remembering their oaths, would entertain with respect to the serious affairs of life," and if they were satisfied from the evidence of the guilt of the accused beyond all

reasonable doubt as defined, they should find him guilty. While the court has discouraged the giving of instructions attempting to define reasonable doubt, it has never gone to the extent of reversing a case for that reason alone. The ordinary juror is capable of determining if a doubt which arises is a reasonable one. *State* v. *Worley,* 82 W. Va. 350; *State* v. *Powers,* 91 W. Va. 737.

State's Instruction No. 3 tells the jury they are the sole judges of the weight of the evidence, and credibility of the witnesses as disclosed by their appearance, demeanor, apparent interest in the case, if any, and that they had the right to give the testimony of any witness such weight as they might determine; and ends in this sentence, ''and this applies to the accused as well as to any and all other witnesses in the case. The criticism is that it gives undue reference to the testimony of the accused, and is a direct thrust at his evidence. *State* v. *Vest,* 98 W. Va. 138; 126 S. E. 587, is relied upon, where an instruction was disapproved which singled out the evidence of the accused and invited the jury's special consideration of his interest in the result of the trial as affecting his credibility. It is true that such an instruction was apparently tacitly approved in *State* v. *Dodds,* 54 W. Va. 293. But the opinion in that case makes no comment on the instruction. It simply shows that such an instruction was given; and the case was affirmed. The instruction before us does not give undue prominence to defendant's evidence, it simply says that the same scales must be used in weighing his testimony as is used in considering the testimony of the other witnesses. And such is the law. There is no intimation in the instruction of the weight which the court would give to the testimony of any witness. It would perhaps be better if an instruction in respect to the credibility of witnesses influenced by their demeanor and interest in the result, bias or prejudice, would make no reference to any particular witness. We are of the opinion that there was no reversible error in the instruction in the light of the evidence.

Defendant's Instruction No. 4 was modified and given, and error is assigned because of the modification. This instruction

as first offered would have told the jury that if it appeared that the prosecuting witnesses were prejudiced towards or had an unfriendly feeling for defendant that fact might be considered in weighing their evidence, and that the evidence of a hostile and unfriendly witness should *always* be scanned with *greater* caution *than the evidence of other witnesses.* As modified the instruction told the jury that "evidence of hostile and unfriendly witnesses should be scanned with caution." The words "always," "greater," and "than the evidence of other witnesses" are eliminated from the instruction as originally prepared. It does not follow that the evidence of a hostile witness should be scanned with greater ·caution than the evidence of other witnesses, for it may be that those other witnesses are equally hostile, and their evidence so unfriendly and palpably untrue that no weight could be given to it. Moreover, it is for the jury to first determine if a witness be hostile and unfriendly. The instruction says that if it appears that the prosecuting witness was unfriendly or prejudiced that fact should be considered, and then apparently assumes that he was hostile. The evidence of a hostile witness should be considered with caution, and the instruction as given so tells them. We perceive no error on this assignment.

Instruction No. 7 for defendant was refused. It is as follows:

"The Court instructs the jury that the establishment by evidence of the fact that the defendant is of good character, taken in connection with all other evidence in the case, may generate a reasonable doubt in the minds of the jury as to the guilt of the defendant, and if the jury believe from the evidence that such good character of the defendant has been established, and if such reasonable doubt is thereby raised, then such doubt must be given in favor of the prisoner and they must acquit him thereon."

Its substance is in no way covered by any other instruction. Evidence of good character and exemplary life may of itself create a reasonable doubt of the guilt of a person accused of crime. It is an important factor to be considered in passing upon the credibility of the evidence of the accused. It

is for this purpose that it is admissible, and he is entitled
to have the jury instructed as to its purpose and the effect
they may give it under the law. Judge Cooley said in *People*
v. *Garbutt*, 17 Mich. 9: "Good character is an important
fact with every man; and never more so than when he is
put on trial charged with an offense rendered improbable
in the last degree by a uniform course of life wholly incon-
sistent with any such crime. There are cases when it becomes
a man's sole dependence, and yet it may prove sufficient to
outweigh evidence of the most positive character." And in
*Hanney* v. *Com.*, 9 Atl. (Pa.) 339, it is well said: "Char-
acter is of importance in this; it may of itself in spite of all
evidence to the contrary raise a reasonable doubt in the minds
of the jury, and so produce an acquittal." To the same
effect is *Edgington* v. *United States*, 41 Law Ed. 467; *People*
v. *Benoier* (N. Y.) 72 N. E. 226, 103 Am. St. Rep. 880; *Com.*
v. *Leonard* (Mass.), 4 N. E. 96. There are many jurisdic-
tions holding that good character *alone* is not sufficient to
raise a reasonable doubt. See 10 A. L. R. page 8 where the
cases are collated in a note. But where there are other cir-
cumstances and facts militating against guilt, good character
is held to be a fact which may serve to create reasonable
doubt. See *State* v. *Morrison*, 49 W. Va. 210, 218. In Vir-
ginia, in a proper case where there is "any doubt" as to de-
fendant's guilt, it is held proper to instruct the jury that
evidence of the good reputation of defendant is a fact to be
considered by them, or may be allowed to resolve the doubt
in his favor but it is not proper to tell them that upon such
evidence they should resolve the doubt in his favor. *Lufty*
v. *Com.*, 126 Va. 707. The instruction would have told the
jury that the good character of defendant having been es-
tablished (and there was no evidence to controvert it) that
fact taken into consideration with all of the other evidence
may generate a reasonable doubt (not that it would neces-
sarily do so) and if from the evidence a reasonable doubt
in their minds is raised it should be resolved in his favor.
The substance of the instruction is that the jury should con-
sider the good reputation of defendant together with the

other evidence and if in so doing they have a reasonable doubt of his guilt, he should be acquitted. While the instruction is inaptly drawn; (the instruction approved in *State* v. *Morrison, supra,* being preferable), we hold that defendant was deprived of a substantial right in the refusal of the court to instruct the jury as to the effect which they had the right to accord to his good character.

The remaining assignment of error is the refusal of the court to give defendant's Instruction No. 6 which would have told the jury that if they believed the prosecuting witness was endeavoring to prevent defendant from working in the mine during the strike and that his charge against him was a part of a plan or scheme to prevent him from working, then they should find him not guilty. If defendant had a pistol unlawfully, the fact that he was arrested therefor as part of a plan to prevent him from working would not warrant an acquittal. It was not error to refuse this instruction.

*Judgment reversed; verdict set aside; new trial awarded.*